**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————X

PATRICK DONOHUE, et al.,

Plaintiffs,

-against-

26-CV-5329 (JMF)
(combined with 53 cases)

KAMAR H. SAMUELS, et al.,

Defendants.

———————————————————————X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RECONSIDERATION OF ECF NO. 101**

## PRELIMINARY STATEMENT

ECF No. 101 denied Plaintiffs' Rule 62.1 application while leaving unaddressed evidence undermining the premise of ECF No. 54: DOE represented that OPT could provide equivalent pendency transportation, yet its own August transportation-capacity warning and September court-ordered disclosures showed that DOE had not established the vendors, nurses, paraprofessionals, and individual arrangements necessary to do so. Spinner Decl. ¶¶ 160–210 & Exs. 1–4; ECF Nos. 90, 98–99. The Court also treated loss of access to iBRAIN as a reason to deny relief, although the contemporaneous record shows that vacating the TRO caused the loss of access and that RESTORATION of its protection permits attendance to resume. ECF Nos. 53, 55-1. Conversely, ECF No. 101 granted DOE an indicative ruling concerning C.P. and T.A-N. based on previously available administrative matters without confronting their distinct implementation records. The Court should reconsider both determinations, preserving an intelligible record for appellate review.

## GOVERNING STANDARDS

Reconsideration is warranted where controlling law or material facts were overlooked, or correction is required to prevent clear error or manifest injustice; it is not a vehicle for arguments that could have been presented earlier. Cho v. BlackBerry Ltd., 991 F.3d 155, 170 (2d Cir. 2021); Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012). See ECF No. 67 at 9–13. Rule 62.1 permits

an indicative ruling when appellate jurisdiction prevents immediate relief; the rule supplies a procedure, not a freestanding substantive basis for reconsideration. Fed. R. Civ. P. 62.1(a); ECF Nos. 67 at 6–9, 76 at 8–10. IDEA pendency protects the operative placement during proceedings, 20 U.S.C. § 1415(j), and operates automatically. Honig v. Doe, 484 U.S. 305, 323–26 (1988); Zvi D. v. Ambach, 694 F.2d 904, 906–08 (2d Cir. 1982).

## POINT I — THE COURT SHOULD RECONSIDER ITS DENIAL OF PLAINTIFFS' ECF NO. 75 APPLICATION

### A. DOE Never Established Equivalent Pendency Transportation; the Court Did Not Confront the Factual-Premise Error

While DOE repeatedly assured the Court that OPT could provide equivalent pendency transportation, OPT itself was warning school administrators in August 2026 of insufficient transportation-vendor capacity. The September 6 report reproduced in Spinner Exhibit 1 described OPT's warning that routes might lack operating vendors and that approximately 2,000 students could begin the school year without transportation. Spinner Decl. ¶¶ 160–165 & Ex. 1. This was no isolated complaint about a late bus: it directly undermined DOE's repeated, unparticularized representations of operational capacity, especially when the Court later required actual student-specific plans. The warning is contemporaneous post-order evidence, not a claim that it was submitted before July 31.

Before ECF No. 54, Plaintiffs had already presented the operative administrative determinations and transport contracts, including E.D.R.'s 2023 FOFD and September 2025 pendency order finding no evidence that DOE had made a good-faith decision to implement the required transport. ECF Nos. 76 at 3–8, 77 ¶¶ 36–74. ECF No. 53 and its attachments further established that S.J.D. signed the Sisters agreement June 17, before DOE's nominal June 10 OPT letter was received June 22; the SESIS log showed no earlier outreach, and the letter merely stated OPT was "prepared" to transport upon additional conditions. ECF No. 53 at 2–3 & Exs. A–B. The contemporaneous record never established an actual equivalent OPT program. See ECF No. 76, Point II.B–H.

Nevertheless, DOE counsel represented at the July 30 hearing that OPT transportation would be equivalent, and ECF No. 54 permitted substitution for Sisters. ECF No. 76 at 12–17; July 30 Tr. ECF No. 56 subsequently required concrete implementation by August 14—recognizing that an actual individualized arrangement had yet to be demonstrated. ECF No. 76, Point II.D–E. That deadline passed. The August 25 Pride contact concerning E.D.R. still could not confirm his individualized route and accompanying staff. Spinner Decl. ¶¶ 64–72.

DOE then received successive opportunities to demonstrate capacity. On September 2 it represented that individualized plans existed for all 37 students; on September 10 it described reallocating transportation resources; on September 16 it designated plans "yes" while failing to identify the responsible vendors; and on September 23 the Court expressly required concrete student-specific plans and an explanation for the blank vendor column. ECF Nos. 80, 88, 90, 93. Yet its September 28 submissions, ECF Nos. 98–99, furnished only incomplete route and assignment materials. The question is not whether buses may exist somewhere in OPT's system; it is whether these students' legally required services were actually arranged.

The independent staffing evidence is devastating. On September 12, TAG MedStaffing still sought verification of L.M.'s required 1:1 transportation paraprofessional; an ordinary bus matron was not the individualized support specified for him. Spinner Decl. ¶¶ 166–175 & Ex. 2. Plaintiffs' Exhibit 3 identifies the required student-specific transportation services. Their Exhibit 4 compares those requirements against DOE's own ECF Nos. 90, 98, and 99 and documents, for all 37 students, the absence of confirmed individual pickup/drop-off arrangements and of identified and assigned nursing or paraprofessional personnel and staffing vendors. It also identifies three students absent from ECF No. 99, missing K-/L-series rosters, and incorrect home ZIP information for six. Spinner Decl. ¶¶ 184–210 & Exs. 3–4. DOE supplied route labels without the human supports essential to make transportation pendency-equivalent.

ECF No. 93 itself singled out the missing provider information and required production of individualized plans. Its five questions also demanded answers about payment outreach, required evidence, Peralta/Nicholls implementation, and September 2 pay-memo representations. ECF No. 93 at 1–2. Plaintiffs raised these precise deficiencies; the September 29 conference and ECF No. 101 did not resolve the fundamental transportation contradiction. Referring Plaintiffs to contempt or enforcement assumes the validity of the substitution decision and therefore evades the question actually presented by ECF No. 75: whether ECF No. 54 should have authorized OPT to displace Sisters at all. See ECF No. 76, Points II–IV.

Had the Court known on July 31 what DOE's own August capacity warning, September staffing inquiry, and final court-ordered route disclosures revealed, would it still have withdrawn the Sisters transportation protections? The answer matters to reconsideration of ECF No. 54 itself. DOE's inability, despite repeated opportunities, to substantiate the promised equivalent arrangement is evidence undermining the decision's predicate—not merely an occasion for post-order compliance litigation.

**B. Ordinary Payment Procedures Did Not Preserve the Existing Pendency Obligations**

Plaintiffs argued that ECF No. 54 replaced the TRO's operative funding protection with an undefined "ordinary course" never shown to function for these students. ECF No. 76, Point III.A;

ECF No. 67, Points VI–VIII. DOE's September 2 representations about prepared pay memoranda did not match the later production: September disclosures identified 35 submitted memoranda, not completed authorization or payment, and none submitted for C.P. or T.A-N. The Court itself asked whether the September 2 representations were accurate and what "pending" outreach meant. ECF Nos. 90–93; Spinner Decl. Part A § IV. A district may administer an established obligation, but not use administrative processing to redefine, suspend, or extinguish it. Compare Mendez v. Banks, 65 F.4th 56 (2d Cir. 2023), with L.V. v. N.Y.C. Dep't of Educ., 2021 WL 663718 (S.D.N.Y. Feb. 18, 2021); ECF No. 67, Points VI–VIII. Plaintiffs do not demand abolition of ordinary documentation. They contend the payment framework authorized by ECF No. 54 was unproven as a method of maintaining pendency, an issue ECF No. 101 did not decide by assigning compliance disputes elsewhere.

**C. Prior-Year Payments Do Not Independently Define Current-Year Pendency Amounts**

ECF No. 76, Point III.B–C, challenged ECF No. 54's use of prior-year figures rather than determining the terms of each operative pendency source, including any administrative determination incorporating an enrollment, transportation, or nursing contract. What DOE previously disbursed is evidence of implementation, not necessarily the legal ceiling of the protected placement. See Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz, 290 F.3d 476, 482–84 (2d Cir. 2002); Doe v. East Lyme Bd. of Educ., 790 F.3d 440, 452–54 (2d Cir. 2015); ECF No. 76 at 23–26. Plaintiffs do not suggest every new annual price automatically controls: the current-year contractual terms must be examined against each final administrative decision and the parties' operative agreement. No student-specific determination of that question appears in ECF No. 101. The issue is not a late invoice; it is whether the July 31 limitation displaced components of the placement protected under § 1415(j).

**D. RESTORATION of the TRO's Protections RESTORES Students' Access to iBRAIN**

The Court's repeated characterization that "iBRAIN is closed" reverses cause and effect and disregards the express terms of the contemporaneous evidence. Students were attending iBRAIN under the June 30 TRO. ECF No. 53 established before the July 31 decision that the TRO protected their continued attendance by satisfying the enrollment contracts' requirement for payment or a court order. ECF No. 53 at 1–2. When ECF No. 54 vacated that protection on July 31, Dr. Daniel Sebbag immediately notified all iBRAIN families that students could no longer attend beginning August 3 unless judicial protection was restored. His notice expressly identified the condition permitting their return: the Court must reverse, modify, clarify, or stay its July 31 Order in a manner that "restores the necessary protection for students to attend." ECF No. 55-1 at 2.

RESTORATION OF THE TRO'S PROTECTIONS RESTORES STUDENTS' ACCESS TO THEIR PENDENCY PLACEMENTS AT iBRAIN. The school's contemporaneous notice establishes both sides of the causal relationship: withdrawal of judicial protection stopped attendance; restoration of that protection permits students to return. The Court cannot characterize the resulting interruption as an independent school closure and then invoke that supposed closure to deny reconsideration of the order responsible for the interruption. The loss of access is the consequence of ECF No. 54—not a justification for leaving ECF No. 54 undisturbed.

This is not a speculative theory invented after the fact. The July 30 record explained the precise payment-or-court-order condition governing attendance; the July 31 notice, filed as ECF No. 55-1, immediately documented the effect of withdrawing that judicial protection. ECF No. 53 at 1–2; ECF No. 55-1 at 2. The Court cannot convert the interruption predicted by the contracts and attributed to its order in a same-day written notice into an independent circumstance making the claimed relief "academic." See ECF No. 76, Point III.D; ECF No. 67, Point IX.

Nor can this reasoning be confined to tuition. The June 30 TRO protected implementation and funding of the students' asserted pendency programs, including nursing and individualized transportation. ECF No. 54 displaced that protection with ordinary funding procedures and OPT substitution. Students with profound medical and physical disabilities require the services that make attendance possible; restoring a theoretical school placement while withholding the necessary transportation or accompanying medical personnel does not restore practical access. The September filings exposed the very staffing and route omissions that made this interdependence unmistakable. Spinner Decl. ¶¶ 166–210 & Exs. 2–4.

The September 29 suggestion that transportation was academic because students could not attend reverses the sequence. The interrupted attendance was the injury flowing from withdrawal of protective relief. Judicial restoration is therefore not futile—it is the remedy specifically identified in the contemporaneous notice to every iBRAIN family. At minimum, the Court must address the evidence and state why ECF No. 55-1 would not alter its assessment of ECF No. 54. A ruling that merely labels iBRAIN closed does not answer the argument previously made in ECF Nos. 67 and 76.

## POINT II — DOE'S ALTERNATIVE INDICATIVE RULING CONCERNING C.P. AND T.A-N. SHOULD BE RECONSIDERED

### A. Previously Available Arguments Do Not Become New Evidence

DOE admitted that its new theories concerning C.P. and T.A-N. could have been raised before the earlier ruling. Its omission does not establish newly discovered evidence or justify reopening

the record one-sidedly after Plaintiffs appealed. ECF No. 67, Points II–IV. Although Rule 62.1 provides an indicative-ruling procedure, it does not lower the reconsideration standard; nor should it become a means for an appellee to obtain affirmative alteration of an appealed injunction through previously available arguments. Id. Points I–IV. The student-specific records make that error consequential, not merely procedural.

**B. C.P.: DOE Implemented iBRAIN Pendency and Then Unilaterally Withdrew It**

C.P.'s history is not reducible to the assertion that a later administrative decision identified a different placement. An October 29, 2024 interim pendency order established iBRAIN as C.P.'s protected placement. DOE then actually funded the program. In a March 12, 2025 sworn declaration, DOE official Sapna Kapoor identified $252,843.12 in tuition and $225,760 in nursing payments through March 31, 2025. Spinner Decl. Part B, C.P. discussion & Ex. 6. That is affirmative administrative implementation of the iBRAIN program, not mere passive awareness that Parent selected a private school.

On July 9, 2025, DOE announced it was pausing its pendency implementation; Parent objected contemporaneously. Spinner Decl. Exs. 7–8; prior Peralta ECF Nos. 31–32. The legal consequences of DOE's earlier conduct, its unilateral suspension, and the competing administrative decisions must be analyzed under § 1415(j), not bypassed by accepting DOE's late account. Critically, Plaintiffs do not contend that the August 25, 2025 administrative pendency order was concealed from Judge Oetken: it was filed before his October 27 determination. The question is the legal consequence of the entire record, including the earlier iBRAIN order and DOE's substantial performance, not whether one adverse document existed.

C.P.'s 2026–27 due-process complaint and federal declaration also alleged that DOE failed to arrange or offer an actual alternative pendency program, and Spinner's present account confirms DOE took no step during that school year to identify, arrange, or make one available. See Peralta v. Samuels, No. 26-cv-05405, ECF No. 8 & Ex. 1; Spinner Decl. Part B. The Court's September 29 discussion did not meaningfully analyze Kapoor's payment admissions, DOE's July 9 termination letter, Parent's objection, or actual 2026–27 nonimplementation. ECF No. 93 separately required DOE to explain what action it had taken concerning C.P. The resulting indicative ruling in ECF No. 101 cannot properly resolve those material issues merely by invoking the later paper placement determination.

Prior acceptance and financing of an administrative order do not automatically establish entitlement to every subsequently requested amount or service; that is not Plaintiffs' claim. The narrower and stronger argument is that an implemented pendency program, followed by DOE's unilateral withdrawal and failure to make another program available, requires an individualized explanation under the controlling pendency authorities. ECF No. 101 supplied no such

explanation. It should withdraw the DOE-favorable indication concerning C.P. pending proper consideration of that evidentiary record.

**C. T.A-N.: An iHOPE Paper Placement Is Not Proof DOE Maintained Pendency**

DOE relies on the corrected March 24, 2025 FOFD identifying iHOPE; Plaintiffs acknowledge that decision and Judge Oetken's adverse March 12, 2026 reconsideration ruling. But the legal source of pendency and DOE's actual implementation of that source are distinct questions. The latter cannot be presumed from the existence of a decision. The pre-October 2025 record contained SRO Decision No. 23-100, on which Parent relied for iBRAIN, and documented DOE's delay in asserting iHOPE: its due-process response did not identify iHOPE, and counsel did not advance that theory until the October 6 administrative hearing. Spinner Decl. Part B & Ex. 5. The corrected FOFD was later submitted as an exhibit in the 2025 federal reconsideration proceedings; its existence must be acknowledged rather than treated as hidden.

SRO No. 23-100 upheld determinations important to iBRAIN's appropriateness but did not grant unconditional full funding: it preserved a 15-percent tuition reduction, per-trip transportation reimbursement, and denial of requested privately obtained nursing. Those limits should be candidly distinguished from the broader question whether DOE provided an actual placement and services. See Spinner Decl. Part B, T.A-N. history; Nicholls federal submissions. In the 2025–26 record, DOE did not establish an actual offer arranging attendance, a start date, or completed individualized iHOPE supports. In 2026–27, DOE took no action to identify, arrange, offer, or make an alternative pendency placement available. Nicholls v. Samuels, No. 26-cv-05638, ECF No. 7 & Ex. 1; Spinner Decl. Part B.

Ventura de Paulino v. N.Y.C. Dep't of Educ., 959 F.3d 519, 535 n.65 (2d Cir. 2020), reserved the question posed by a school district's failure or refusal to provide pendency services. Plaintiffs do not claim the footnote decides the entitlement automatically or permits any unilateral placement switch. They submit that its reservation prevents the Court from treating DOE's unimplemented iHOPE theory as the end of the inquiry. See ECF No. 67, Points II–IV; Spinner Decl. Ex. 5. Whether DOE maintained the student's actual pendency program, not merely identified a historical administrative source, is central to the relief requested.

Here ECF No. 93 demanded an account of DOE's concrete actions concerning T.A-N. The Court's DOE-favorable indicative ruling nevertheless failed to grapple with the absence of implementation in either school year and the independent evidentiary significance of that failure. On reconsideration the Court should withdraw that indication, or at minimum address this question directly so that the Second Circuit can review the precise basis of the decision.

**CONCLUSION**

For the reasons set out in Plaintiffs' previously filed ECF Nos. 67 and 76 and supported by the existing docket and Spinner Declaration with Exhibits 1–8, Plaintiffs request reconsideration of ECF No. 101. As to ECF No. 75, the Court should indicate that, upon limited remand, it would revisit ECF No. 54's substitution of OPT for Sisters, ordinary-payment framework, prior-year funding ceiling, and withdrawal of protections necessary to RESTORE students' access to iBRAIN; alternatively, it should indicate that Plaintiffs' motion raises substantial issues warranting limited remand under Rule 62.1(a)(3). As to DOE's alternative ECF No. 65 request, it should withdraw its favorable indicative ruling concerning C.P. and T.A-N. Reconsideration should squarely address the material contrary evidence, the previously briefed legal authorities, and the difference between an existing pendency source and the actual maintenance of the program it requires. Plaintiffs request no immediate modification of the appealed order without the jurisdictionally appropriate Second Circuit remand.

Dated: October 14, 2026
New York, New York

Respectfully submitted,
/s/ Jeffrey A. Spinner
Jeffrey A. Spinner, Esq.
Liberty & Freedom Legal Group, Ltd.
105 East 34th Street, Suite 190
New York, New York 10016
Telephone: (646) 850-5035
Email: jeff@pabilaw.org
*Attorneys for Plaintiffs*

**WORD COUNT VERIFICATION**

I certify that the substantive memorandum from Introduction through Conclusion contains 3,012 words, excluding the cover page, Tables of Contents and Authorities, signature block, and this verification.

Respectfully submitted,

/s/ Jeffrey A. Spinner

Jeffrey A. Spinner, Esq.